TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00159-CR







Jorge Rave, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT


NO. CR-97-0047, HONORABLE JACK ROBISON, JUDGE PRESIDING







 A jury convicted appellant Jorge Rave of possessing methamphetamine and assessed
punishment at fifteen years in prison and a $10,000 fine. Appellant complains that the trial court
erred by denying his motion to suppress illegally seized evidence. He also complains of the
court's admission of extraneous-offense evidence and the court's failure to instruct the jury
regarding that evidence. Finally, he complains the evidence as a whole was insufficient to show
he intentionally or knowingly possessed methamphetamine. We will affirm the conviction and
punishment.


Background


 San Marcos Police Department officers Laray Taylor and Jeff Caldwell responded
to a complaint of loud music in a condominium. Taylor knocked on the door, identified himself
as a police officer, and requested the door be opened. As Taylor did this, Caldwell looked
through a living-room window and saw appellant and another person apparently sleeping. He then
saw appellant awake, grab two backpacks, and run toward the back of the condo.

 After two or three minutes, an inhabitant opened the door. Taylor recognized a
strong smell of burnt marihuana. The man who answered the door allowed the officers to enter. 
Doing a cursory search of the premises to assess threats to their safety, the officers found four
other persons; appellant was in a bedroom with another man, apparently asleep (but possibly
pretending). The officers gathered all five people into the living room. The officers called
narcotics investigators, who arrived, swore out an affidavit, and left to obtain a search warrant.

 Upon the return of the narcotics officers, the search began. In the bedroom where
appellant went, officers found a pile of papers (mostly notepad pages) and two backpacks. Most
of the documents resembled tally sheets used by drug dealers to keep track of their sales; these
documents did not contain express references to drugs, nor did they bear appellant's name. 
Receipts for tires and a pager found near the tally sheets had appellant's name on them. One of
the backpacks had more papers. Another backpack held baggies containing methamphetamine.


Analysis


 Appellant raises five issues on appeal. Four concern the admission of
evidence--two at the culpability phase of trial and two at the punishment phase. The fifth issue
concerns the sufficiency of the evidence to show intentional and knowing possession.

 Appellant first contends that the trial court erred by denying his motion to suppress
illegally seized evidence. We will assume without deciding that he correctly contends that he had
the same expectation of privacy that his hosts had. His expectation of privacy was similarly
subject to the terms of the search warrant, the legitimacy of which he does not challenge. The
warrant authorized police to enter the condo and search for marihuana, marihuana paraphernalia,
and tally sheets related to the possession and distribution of narcotics.

 Appellant argues that the failure to list methamphetamine deprived the police of the
right to seize that drug without getting a new warrant. He also contends that the documents were
seized improperly because the affidavit supporting the warrant did not establish probable cause to
believe such items would be found. The court of criminal appeals has rejected a similar argument. 
See Snider v. State, 681 S.W.2d 60, 63 (Tex. Crim. App. 1984). While searching pursuant to
warrant for items stolen in a burglary, the police found items from a different burglary. Holding
that the trial court properly denied the motion to suppress, the court wrote:


The items involved in the instant case, although they are not described in the
warrant, need not be shown to have been related to the investigation for which the
warrant issued because they were in plain view while the officers were legally upon
the premises under authority of the warrant. Appellant does not contest the validity
of that warrant.


* * *



The initial intrusion must be proper so that the police have a right to be where they
are; the discovery of the evidence must be inadvertent; and it must be immediately
apparent to the police that they have evidence before them. 


Id. Appellant does not challenge the police officer's authority to be in the condo searching for
marihuana and marihuana paraphernalia. Nor does he challenge the police officers' authority to
search the bag containing the methamphetamine. A police officer testified that, though he was
searching for marihuana, he immediately believed that he had found a different illegal substance. 
Similarly, the location of the seized tally sheets in plain view or in bags legitimately searched
renders moot any dispute over whether the affidavit justified the warrant's inclusion of tally sheets. 
The police officers testified that they immediately recognized the documents as tally sheets, or
drug-dealers' bookkeeping. Because the contents of the affidavit and warrant do not restrict the
seizure of items found when searching for items legitimately listed in the warrant, the trial court
did not err by denying the motion to suppress items found pursuant to the warranted search.

 Appellant contends that the trial court erred by admitting at the culpability phase
of trial evidence that he failed to identify himself properly to police officers. He argues that the
State failed to notify him of its intent to offer this extraneous-offense evidence as required by
Texas Rule of Evidence 404(b). That rule requires the State to give reasonable notice of intent
to offer evidence of crimes, wrongs, or acts "other than that arising in the same transaction" as
the offense being tried. Tex. R. Evid. 404(b). Appellant asserts that his failure to identify himself
was not in the same transaction as his possession of methamphetamine because the jurors could
understand the proof regarding the possession without hearing evidence about the false name.

 We find no error in the court's admission of this evidence. We review the
admission of same-transaction evidence for an abuse of discretion. Blakeney v. State, 911 S.W.2d
508, 513 (Tex. App.--Austin 1995, no pet.). Same-transaction evidence includes evidence of
other crimes that illustrates circumstances surrounding the commission of the primary offense
indicating consciousness of guilt. See Yates v. State, 941 S.W.2d 357, 366-67 (Tex. App.--Waco
1997, pet. ref'd). In Yates, the Waco court found that a murderer's dismantling of the victim's
truck, though not necessary to the jury's understanding of the elements of murder, was a
circumstance surrounding commission of the offense that was probative of consciousness of guilt. 
See id. at 366. Similarly, appellant's failure to properly identify himself indicates a consciousness
of guilt. Documents bearing the name "Rave" near the alleged tally sheets and the drugs are
among the affirmative links between him and the drugs. He may have given a false name to shield
himself from that linkage to possession. Appellant offered no legitimate reason for giving the false
name. The trial court did not err by concluding the failure to identify himself was part of the same
transaction as the possession and therefore not an extraneous offense within the meaning of Rule
404(b). Nor did the trial court err by concluding that the probative value of this evidence is not
substantially outweighed by the risk of unfair prejudice, confusion of the issues, or misleading the
jury. See Tex. R. Evid. 403.

 Appellant contends that the evidence was legally and factually insufficient to support
his conviction. To review the legal sufficiency of the evidence, we view it in the light most
favorable to the verdict and determine whether any rational trier of fact could have found the
element beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979); Griffin v. State,
614 S.W.2d 155, 159 (Tex. Crim. App. 1981). To review the factual sufficiency of the evidence,
we view all the evidence without that prism and set aside the verdict only if it is so against the
weight of the evidence as to be clearly unjust. Cain v. State, 958 S.W.2d 404, 406-408 (Tex.
Crim. App. 1997) (citing Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996)).


 In order to establish the unlawful possession of a controlled substance, the State
must prove (1) that the accused exercised care, control, and management over the contraband, and
(2) that the accused knew the substance possessed was a controlled substance. Pierce v. State, 577
S.W.2d 253, 254 (Tex. Crim. App. 1979). When the defendant did not exclusively control the
place where the contraband was found, additional facts and circumstances must affirmatively link
him to the contraband in a way that indicates he knew about the contraband and exercised control
over it. Whitworth v. State, 808 S.W.2d 566, 569 (Tex. App.--Austin 1991, pet. ref'd)
(compiling list of fourteen affirmative links). 

 Evidence affirmatively links appellant to the methamphetamine. A police officer
saw appellant grab the bag containing the drugs and run to the back of the condo. Police found
appellant in the bedroom next to the bag containing the drugs; they said he appeared to be
pretending to sleep only moments after leaving the living room with the bag. The bag containing
the drugs was found near documents suspected to be tally sheets, or drug-dealer bookkeeping. 
Some of the tally sheets were adjacent to a receipt bearing appellant's name. When asked to
identify himself, appellant gave a false name, indicating awareness of guilt. 

 Appellant attempts to show the weakness of these links. He did not own the condo. 
He was not the only person in the condo or the bedroom near the drugs. He testified he actually
was sleeping again when police entered the bedroom. The owners of the condo had been arrested
for drug possession and had been smoking marihuana before police arrived; there was no evidence
that appellant was under the influence of controlled substances. There was no odor of
methamphetamine. The suspected tally sheets had neither his name nor any plain indication that
they were drug-related. 

 We conclude that legally and factually sufficient evidence link appellant to the
drugs. Appellant's grabbing of the drug bag and obfuscation of his identity indicate an exercise
of control coupled with an awareness of the illegality of that exercise. In that context, the nearby
tally sheets appear drug-related; his receipt's proximity to the tally sheets supports the inference
that he is similarly connected to the drugs. Viewed in the light most favorable to the verdict, this
evidence could lead a rational trier of fact to find beyond a reasonable doubt that he possessed the
drugs. Viewing all the evidence impartially, we conclude that the jury's verdict is not so against
the weight of the evidence as to be clearly unjust.

 Appellant next complains that at the punishment phase the trial court violated the
notice provisions of Texas Code of Criminal Procedure Annotated article 37.07 section 3(g) by
admitting evidence of extraneous drug-possession charges. Section 3(g) requires the State, upon
defendant's request, to notify the defendant if it intends to introduce evidence of prior bad acts. 
No notice is required, however, if the evidence is used to rebut assertions made by the defendant
in his presentation at punishment. See Washington v. State, 943 S.W.2d 501, 506 (Tex.
App.--Fort Worth 1997, pet. ref'd). For instance, when a witness, by his direct testimony, leaves
a false impression that he has not been in trouble with the police except for two convictions, it is
legitimate to show he was arrested on occasions other than those discussed in his direct testimony. 
Nelson v. State, 503 S.W.2d 543, 545 (Tex. Crim. App. 1974). At appellant's punishment
hearing, the State did not present any new evidence in its case-in-chief. On direct examination by
his attorney, appellant testified:


I mean people do drugs; you know, not everybody, you know. I certainly didn't,
you know. . . . And so, yes, I'm surrounded by a lot of people that do drugs or
even sell them or whatever. I don't--you know, I'm not too crazy about the ideas
or whatever, you know. A lot of times, you know, when they had like stuff around
me, I would be like, you know, "Keep that away from me, you know, I don't want
to get in trouble," or whatever. 


On cross-examination, before the State asked about the other drug charges, the following exchange
occurred, reinforcing the meaning of appellant's testimony on direct examination:


Q. And you also testified to the jurors that the fact that this case has come about
came as something of a shock to you. You never thought this would happen
to you in a million years. Is that right?


A. Well, pretty much, yes, that's what I said, as far as meaning like what's
happening right now, you know, all that--the evidence and all that stuff that
they came up with and all that, and what I'm being charged with and all that.



Only after he made these statements did the State inquire about his arrests for possession of
methamphetamine in Fayette County in July 1995 and for possession of methamphetamine and
LSD in Austin County in December 1995; these charges were still pending when he was tried in
March 1998 for this 1996 offense in Hays County. Evidence of these charges tended to rebut his
testimony regarding his lack of previous involvement with drugs. It also bore on his credibility
in general and specifically with regard to his suitability for probation. Appellant opened the door
to this evidence with his testimony; the Court did not err by allowing the State to rebut the
testimony without notice.

 Finally, appellant contends that the trial court erred at the punishment phase by not
instructing the jury to consider the extraneous offenses of failure to identify and drug possession
only if it found the State proved his guilt of them beyond a reasonable doubt. The court of
criminal appeals has determined that there is "an absolute systemic requirement that an instruction
on reasonable doubt be submitted to the jury in all cases where the burden of proof requires the
jury to find guilt beyond a reasonable doubt." Reyes v. State, 938 S.W.2d 718, 721 (Tex. Crim.
App. 1996) (interpreting Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991)). Both Reyes
and Geesa, however, involved the culpability phase of trial. In Mitchell v. State, the court
expanded the Geesa requirement, holding that a reasonable-doubt instruction also must be included
in the jury charge when requested at the punishment phase of trial. Mitchell v. State, 931 S.W.2d
950, 954 (Tex. Crim. App. 1996). In the case at bar, appellant never requested this instruction
nor objected to its omission in the punishment charge; nevertheless, he contends the trial court had
a duty to give this instruction without objection or request.

 This Court has previously held that, absent a defendant's request, there is no error
when a trial court fails to give an instruction requiring the jury to find beyond a reasonable doubt
that the defendant committed the extraneous offenses before considering evidence of those
offenses. See Smith v. State, 899 S.W.2d 31, 35 (Tex. App.--Austin 1995, pet. ref'd) (no error
where instruction omitted at punishment phase); see also Posey v. State, 966 S.W.2d 57, 62 (Tex.
Crim. App. 1998) (no error in failure to instruct jury on unrequested defensive issues at
punishment, citing Code of Criminal Procedure article 36.14); but see Huizar v. State, 966
S.W.2d 702 (Tex. App.--San Antonio 1998, pet. granted) (regardless of whether counsel
requested an instruction, trial court erred by failing to instruct jury, at either culpability or
punishment phase, not to consider evidence of extraneous offenses unless convinced beyond
reasonable doubt that defendant committed those acts).

 Though we believe appellant's failure to request this instruction waives any error,
mindful of some uncertainty in the law, we will now presume error and conduct an Almanza-style
harm analysis as we did in Smith. See Smith, 899 S.W.2d at 35 (citing Almanza v. State, 686
S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)); cf. Cormier v. State, 955 S.W.2d 161,
163 (Tex. App.--Austin 1997, no pet.) (Almanza review applied where punishment charge
included special instruction on reasonable doubt burden for extraneous offense evidence but failed
to define "reasonable doubt"). (1) Under Almanza, an appellant who complains of an error in the
charge for the first time on appeal must demonstrate that the error was so egregiously harmful that
he was denied a fair and impartial trial. Almanza, 686 S.W.2d at 171. This requires a showing
of actual harm, not just theoretical harm. Id. at 174.

 Appellant argues that he was harmed by the admission of evidence regarding three
other unadjudicated drug-possession charges pending against him, including two for possession
of methamphetamine. After the State adduced this evidence on cross-examination, appellant
discussed on redirect examination the nature of the charged offenses and explained why he was
not guilty of either offense. Appellant contends that his sentence of fifteen years and fine of
$10,000, respectively near and at the top of the allowable ranges, demonstrate the harm from the
admission of the unadjudicated extraneous offenses because the sentence is unusually harsh for a
first offense. 

 The State responds that it offered the evidence merely to rebut appellant's claim that
he was shocked at being charged with a drug-possession offense. (3) The nature of its proof supports
that argument. The State did not call any of the peace officers involved or inquire deeply into the
offenses, but merely asked Rave if he had been arrested previously for the same offense. The
State's impeachment purpose was served if jurors found that he had been arrested previously for
a drug-possession offense. Even if the proof were held to a beyond-a-reasonable-doubt standard
for impeachment purposes, appellant admitted the arrests; this sharply diminishes the credibility
of his expressed surprise at the instant arrest. Appellant could have requested an instruction that
the jury's consideration of this evidence be limited to the impeachment purpose but did not, nor
does he assign the court's failure to give a limiting instruction as error. Robinson v. State, 701
S.W.2d 895, 899 (Tex. Crim. App. 1985). Failure to give a limiting instruction has not yet been
held to be fundamental error. See Webb v. State, 760 S.W.2d 263, 265 (Tex. Crim. App. 1988).

 Further, the trial court did give the reasonable-doubt instruction regarding
extraneous offenses at the culpability phase. The arguments and instruction segment of the
culpability phase began at 8:50 a.m.; the jury returned its guilty verdict by 11:00 a.m. The court
reconvened that same day for the punishment phase, and the jury returned its punishment verdict
that afternoon. There is no reason to believe the jury did not remember the charge given in the
culpability phase, and no evidence that the jury did not follow the culpability instructions when
it later considered punishment. See Cormier, 955 S.W.2d at 164 (no evidence that defendant was
harmed by absence of "reasonable-doubt" definition in punishment charge where definition present
in culpability charge and punishment deliberations began less than 24 hours after culpability charge
given). 

 We also note that, aside from the substance of the testimony regarding the previous
arrests, appellant's explanation of the circumstances of all three of his arrests exposed a large
inconsistency in his testimony, creating a credibility problem. Early in his testimony appellant
said, "I had never been to Austin" before the events surrounding the instant arrest. But on
redirect, when describing the first of the unadjudicated offenses, he stated that he and his
companions came to Austin to hang out at the club scene; he even described getting lost on an
Austin freeway (Loop 1). When describing the second offense in Austin County, he stated "I was
coming back from Austin . . . . Yeah, I was in Austin city" before his arrest in Austin County. 
He later explained his theory that he had been set up for these arrests by people who did not like
the fact that he had been "concentrating more on the Austin scene" in his work as a disc jockey
on the "rave circuit." These inconsistencies certainly diminished the credibility of his testimony
and protestations of innocence and may have moved jurors to impose a stiffer sentence.

 We hold that even if the court erred in omitting a reasonable-doubt instruction in
the punishment phase concerning the State's burden of proof of extraneous-offense evidence, the
appellant has not met his burden of showing that the error was so egregiously harmful as to deny
him a fair and impartial trial. See Almanza, 686 S.W.2d at 171.

 Having resolved all issues on appeal against appellant, we affirm the conviction and
punishment.



 

 J. Woodfin Jones, Justice

Before Chief Justice Aboussie, Justices Jones and B. A. Smith

Affirmed

Filed: April 29, 1999

Do Not Publish
1. For this charge error, we use the standard set out in Almanza, 686 S.W.2d at 171, rather
than Rule of Appellate Procedure 44.2(a). Every case other than Huizar we have found addressing
such an error has applied the standard set out in Almanza. See Huizar, 966 S.W.2d at 710
(Duncan, J., dissenting); see also Mitchell, 931 S.W.2d at 954 (remanding to court of appeals to
conduct Almanza harm analysis regarding trial court's refusal of appellant's request for instruction
on burden of proof for extraneous-offense evidence admitted during punishment phase); Cormier,
955 S.W.2d at 164 (applying Almanza standard to failure to define "reasonable doubt" in
instruction on burden of proof for extraneous offense evidence admitted during punishment phase);
Splawn v. State, 949 S.W.2d 867, 874 (Tex. App.--Dallas 1997, no pet.) (applying Almanza
standard to failure to define reasonable-doubt standard for considering extraneous offenses); Yates,
917 S.W.2d at 924 (assuming, without deciding, that failure to give instruction was error and
applying Almanza standard); Smith, 899 S.W.2d at 35 (assuming, without deciding, that failure
to give instruction was error and applying Almanza standard). Though the reasonable-doubt
instruction implicates both state and federal constitutional rights in the context of conviction, (2)
2. See In re Winship, 397 U.S. 358, 363-64 (1970) (reasonable-doubt standard has
constitutional stature); Reyes, 938 S.W.2d at 721 n.7 (stating that the rules announced in Geesa
implement the constitutional requirement that a criminal conviction can only stand except upon
proof beyond a reasonable doubt). 
 '
 
 
3. During a discussion held outside the presence of the jury to consider appellant's objection
to the extraneous-offense testimony, the following exchanges occurred between the court and
prosecutor:


THE COURT: Well do you intend to go into that one?


MR. MAU: I do, Your Honor, but not for the --not for the purpose that I think
is contemplate by [article 37.07]. 


* * *



 . . . He was arrested two times prior to this incident. He has told
this jury that he never, in a million years, thought something like this
would happen to him, despite the fact he associated with people that
he knew dealt or used drugs. I think the jury is under the impression
that he tried to distance himself, as much as possible, from those
other people. 


* * *



 That's just--if that's not a ball-faced (sic) lie, it's clearly-- 


* * * 



 I wasn't planning on going into that, but I feel like I have to now
because I think he has misled [the jury].



cence and may have moved jurors to impose a stiffer sentence.

 We hold that even if the court erred in omitting a reasonable-doubt instruction in
the punishment phase concerning the State's burden of proof of extraneous-offense evidence, the
appellant has not met his burden of showing that the error was so egregiously harmful as to deny
him a fair and impartial trial. See Almanza, 686 S.W.2d at 171.

 Having resolved all issues on appeal against appellant, we affirm the conviction and
punishment.



 

 J. Woodfin Jones, Justice

Before Chief Justice Aboussie, Justices Jones and B. A. Smith

Affirmed